# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JESSICA EWING,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:19CV00702 |
| | ) | |
| **v.** | ) | **OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Respondent. | ) | |

*Jessica Ewing, Pro Se Petitioner; Leah A. Darron, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Jessica Ewing, a Virginia inmate proceeding pro se, brings this petition for habeas corpus pursuant to 28 U.S.C. § 2254, challenging her 2015 conviction for first-degree murder. The respondent has filed a Motion to Dismiss, to which Ewing has responded. Upon review of the record and pleadings, I find that Ewing has procedurally defaulted three of her claims. On the remaining two claims, alleging ineffective assistance of counsel, I find that Ewing has failed to show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, nor has she shown that the decision was based on an unreasonable determination of the facts. Accordingly, I will grant the respondent's motion.

I.

On July 22, 2014, a Montgomery County Circuit Court grand jury indicted Ewing for first-degree murder in violation of Virginia Code § 18.2-32 and concealing a dead body in violation of Virginia Code § 18.2-323.02.  On February 12, 2015, Ewing pled guilty to concealing a dead body and entered an *Alford* plea to the first-degree murder, both without benefit of a plea agreement.[1]

Following consideration of a presentence report, victim impact statements, and a full day of testimony at a sentencing hearing on June 1, 2015, the trial court imposed an above-guideline sentence of eighty years for first-degree murder, with thirty-five years suspended, and five years for concealing a dead body, all of which the court suspended.  She was also ordered placed on a period of twenty years supervised probation upon her release from incarceration.  The court entered its judgment on June 8, 2015.  Ewing filed a motion for reconsideration of her sentence, seeking to reduce her active prison time from forty-five years to thirty years (eleven months shy of the guideline midpoint).  After hearing evidence and argument from counsel, the court denied the motion for reconsideration on August 10, 2015.

---

[1] An *Alford* plea is one in which a defendant maintains her innocence, but chooses to plead guilty because the evidence is sufficient to support a conviction and she does not wish to risk going to trial; the Supreme Court upheld such pleas as constitutionally permissible, if knowingly and voluntarily made and supported by substantial evidence. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Ewing appealed to the Court of Appeals of Virginia.  Defense counsel filed the Petition for Appeal along with a Motion to Withdraw, pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967), raising as the sole issue that the trial court abused its discretion in denying the motion for reconsideration of sentence.  In her pro se supplemental petition, Ewing additionally argued that the trial court erred by (1) considering a text message she sent and journal entries, (2) not allowing more time for testimony of character witnesses, and (3) failing to transfer venue out of Montgomery County.  The appellate court "determined the case to be wholly frivolous" and denied the appeal.  *Ewing v. Commonwealth*, No. 1352-15-3, slip op. at 1 (Va. Ct. App. May 4, 2016).  Ewing did not appeal to the Supreme Court of Virginia.

On April 28, 2017, Ewing filed a Petition for a Writ of Habeas Corpus in the Montgomery County Circuit Court, alleging that her trial counsel provided ineffective assistance of counsel in giving her unreasonable advice that resulted in her entering an *Alford* plea and in failing to advise her of the elements of the offense, lesser included offenses, available defenses, likelihood of conviction of a lesser included offense, and the different sentence ranges applicable to lesser offenses.  The court found that Ewing's habeas allegations contradicted her representations to the court at the time of the plea hearing and dismissed the petition under *Anderson v. Warden of Powhatan Correctional Center*, 281 S.E.2d 885, 888 (Va. 1981).  The

Supreme Court of Virginia refused her appeal on September 9, 2019, finding "no reversible error in the judgment complained of." *Ewing v. Clarke*, No. 190342 (Va. Sept. 9, 2019).

On October 14, 2019,[2] Ewing filed the current petition by depositing it in the prison mailroom to be mailed to the court.  She raises the following claims in her petition:

> (1) Due to unreasonable (i.e., inadequate, incomplete, and/or overly optimistic) advice from counsel, Ewing entered an ill-advised *Alford* plea "straight up" to first degree murder. But for counsel's unreasonable advice, Ewing would have entered a plea of not guilty and insisted on going to trial.

> (2) Counsel failed to fully advise Ewing regarding the elements and available defenses to first-degree murder, the strengths and weaknesses of those defenses, the likelihood of conviction for lesser included offenses of either second-degree murder or manslaughter, and the resulting impact on the overall sentence.  But for counsel's unreasonable advice, Ewing would have entered a plea of not guilty and insisted on going to trial.

> (3) Counsel failed to subpoena key witnesses for the sentencing hearing.

> (4) Counsel failed to [move] for a change in venue due to the petitioner's heavily publicized case.

---

[2] Respondent contends that Ewing mailed the petition on October 16, 2019.  For reasons discussed later herein, I find that Ewing delivered the petition to the mailroom on October 14.

> (5) Violation of Due Process and abuse of judicial
> discretion from the denial of reconsideration.

Pet. Attach. 1-5, ECF No. 1-1.

## II.

As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), federal statutes require state prisoners to meet several procedural requirements before a federal court may grant federal habeas relief.  These requirements promote the interests of finality, comity, and federalism.  *Coleman v. Thompson*, 501 U.S. 722, 746 (1991).  First, the petitioner must file her claim timely, generally within one year from the date on which the state court judgment became final.  28 U.S.C. § 2244(d)(1)(A).  Next, she must exhaust her state court remedies before filing in federal court.  28 U.S.C. § 2254(b)(1)(A).  Closely related to exhaustion is the doctrine of procedural default.  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  I will address each of these procedural requirements in turn.

A. <u>Timeliness.</u>

As applicable to this case, 28 U.S.C. § 2244(d)(1)(A) requires a petition for habeas corpus to be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  *Id.*  The statute further states:

> The time during which a properly filed application for
> State post-conviction or other collateral review with
> respect to the pertinent judgment or claim is pending shall

5

> not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Under § 2244(d)(1)(A), Ewing's conviction became final on June 3, 2016, when her time to appeal to the Supreme Court of Virginia expired.[3]  She had one year from that date, or 365 days, to file her federal habeas petition.  However, the time during which a properly filed state habeas proceeding was pending does not count towards the one-year limitation, according to § 2244(d)(2).  Ewing properly filed her state habeas petition on April 28, 2017,[4] 329 days after her conviction became final.  At that time, the clock stopped on the one-year statute of limitations, with thirty-six days remaining, and the statute remained tolled so long as the state habeas was pending.  *Carey v. Saffold*, 536 U.S. 214, 220 (2002).  State post-conviction review ended on September 9, 2019, when the Supreme Court of Virginia, the state's highest court, denied review.  *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).  Once the state habeas review ended, the federal statute of

---

[3] A notice of appeal to the Supreme Court of Virginia must be filed within thirty days from entry of judgment by the Court of Appeals of Virginia. R. Sup. Ct. Va. 5:14(a). The Court of Appeals of Virginia entered its order on May 4, 2016; thirty days thereafter was June 3, 2016.

[4] Ewing indicated in her § 2254 petition that her state habeas petition was filed April 26, 2017.  That is the date she signed the petition.  However, Ewing was represented by counsel at the time, who mailed the petition to the Montgomery County Circuit Court, which received and filed the petition on April 28, 2017.  Thus, Ewing did not file the pleading herself as an inmate, and any state rule deeming inmate pleadings to be filed when delivered to prison officials for mailing  could not apply.

6

limitations resumed from where it left off; the one-year period did not start over again. *Harris v. Hutchinson,* 209 F.3d 325, 327 (4th Cir. 2000). The thirty-six days remaining for Ewing to file a timely federal petition expired on October 15, 2019.

Ewing's petition is signed under penalty of perjury, stating that she placed her petition in the prison mailing system on October 14, 2019. Respondent asserts that Ewing's petition was not filed until October 16, 2019, one day after the limitation period expired, based upon an Affidavit of J. Goode, Captain at Fluvanna Correctional Center, attached as Exhibit E to respondent's brief. ECF No. 11-5. Captain Goode states, based upon her review of outgoing legal mail logs, that "Ewing sent legal correspondence to the U.S. District Court, Roanoke Division on October 16, 2019." *Id.* at 1. Although the affidavit references an Enclosure A as a copy of the mail log entry, no Enclosure A is attached. Ewing responded by reaffirming that she placed the mail in the prison mail on October 14, 2019. She attached an exhibit to her response, consisting of a form captioned "Offender Trust System—Withdrawal Request," for legal mail purposes, filled out with the address to the Clerk's Office of the United States District Court in Roanoke, Virginia. Ewing's signature was dated October 14, 2019, and her signature was witnessed by Sergeant K. King, also dated October 14, 2019. The second page of Ewing's exhibit was a typewritten statement filled out by Richard Bolden, a mailroom employee at Fluvanna Correctional Center, stating that "On 10/14/2019, Offender Jessica Ewing

submitted a withdrawal form with attached legal mail, dated 10/14/2019, signed by Sgt. King, via the Offender Mailbox for mailing." ECF No. 14-1 at 2. Bolden then indicated that the mail was "processed out" of the institution on October 16, 2019.

If I accept that Ewing placed her petition in the mail on October 14, 2019, then her petition was timely filed in this court. Under the prison mailbox rule, when a prisoner, before the expiration of the statute, delivers a habeas petition to prison authorities for mailing to the court, the petition is considered timely filed. *United States v. McNeill*, 523 F. App'x 979, 982 (4th Cir. 2013) (unpublished). The operative question is not when the mail was "sent" to the court or "processed out" of the institution, but when the petition was delivered to the prison mail system. Based on the representations of Ewing and Bolden, plus the Offender Trust System—Withdrawal Request form signed by Sergeant King on October 14, 2019, I find that Ewing's petition is timely. A "pro se prisoner has no choice but to entrust the forwarding of his [petition] to prison authorities whom he cannot control or supervise and who may have every incentive to delay." *Houston v. Lack*, 487 U.S. 266, 271 (1988).

B. Exhaustion and Procedural Default.

Under the AEDPA, a federal court may not grant a state prisoner habeas relief under § 2254 unless she has exhausted available state court remedies. 28 U.S.C. § 2254(b)(1)(A). This simply means that the petitioner must present her

constitutional claims to the highest state court before seeking federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  So long as the claim is fairly and properly presented to the highest court, either on direct appeal or in state collateral proceedings, then the claim is exhausted.  *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000).  To meet the exhaustion requirement, the petitioner "must have presented to the state court both the operative facts and the controlling legal principles." *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002).[5]  Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Closely related to exhaustion is the doctrine of procedural default.  If a state court dismisses a claim based on failure to follow state procedural rules, that procedural default can be an independent and adequate state law ground for dismissal of a petitioner's claim.  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Likewise, if a petitioner has not exhausted a claim in the highest state court and cannot now do so because of time limits or other adequate and independent state procedural bars, the claim is considered simultaneously exhausted and defaulted. *Coleman*, 501 U.S. at 732.  Once a claim is procedurally defaulted, a petitioner can prevail on her § 2254 claim only if she can show both cause for the default and actual

---

[5] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

prejudice as a result of the claimed federal violations, or if she can demonstrate that failure to consider the claims will result in a miscarriage of justice because she is actually innocent. *Id.* at 750.

Three of Ewing's claims have not been presented to the Supreme Court of Virginia, the state's highest court, and the time for submitting those claims in Virginia has expired. Her direct appeal to the Supreme Court of Virginia had to be noted by June 3, 2016, and it was not. *See* R. Va. Sup. Ct. 5:14(a). Further, Ewing's state habeas was due no later than May 4, 2017. Va. Code Ann. § 8.01-654(A)(2). A state habeas petition now would be untimely; further, Ewing would not be allowed to submit a successive petition to raise issues that she could have raised in her first habeas petition. Va. Code Ann. § 8.01-654(B)(2). Thus, claims 3, 4, and 5 are simultaneously exhausted and defaulted. *Coleman,* 501 U.S. at 732.

Claims 3 and 4 both allege ineffective assistance of counsel. In claim 3, Ewing alleges that counsel failed to subpoena witnesses for her sentencing hearing. In claim 4, she alleges that counsel should have filed a motion to change venue. In Virginia, ineffective assistance of counsel claims can only be raised for the first time in state habeas proceedings.[6] *Blevins v. Commonwealth*, 590 S.E.2d 365, 368 (Va.

---

[6] Ewing asserts in her petition that she raised claims 3 and 4 in her appeal to the Court of Appeals of Virginia, but in reviewing the state's complete habeas file, nothing alleges a complaint for ineffective assistance of counsel in her direct appeal. Indeed, such an argument would have been rejected because such complaints can only be made in the first instance in state habeas proceedings. *Blevins*, 590 S.E.2d at 368. Ewing argued in her

2004).  Ewing did not allege either claim 3 or claim 4 in her state habeas proceeding, and thus, both claims would now be procedurally barred under state law, and accordingly, simultaneously exhausted and defaulted for federal habeas purposes.

Ewing raised claim 5, alleging a violation of due process and abuse of discretion in denying the motion for reconsideration of her sentence, in her appeal to the Court of Appeals of Virginia.  However, she never appealed further to the Supreme Court of Virginia, and the time for doing so has long since passed.  Because Ewing did not present claim 5 to the Supreme Court of Virginia and would now be procedurally barred from doing so, this claim is also simultaneously exhausted and defaulted.

Ewing has not alleged any reason, good cause or otherwise, for her procedural default of claims 3, 4, and 5.  Cause for procedural default requires the existence of some objective factor, external to the defense, and not fairly attributable to the prisoner.  *Coleman,* 501 U.S. at 756–57.  Nothing in the record indicates some external impediment that caused Ewing's failure to raise all her ineffective assistance of counsel claims in her state habeas, nor does she give any reason for her failure to pursue a direct appeal to the Supreme Court of Virginia for claim 5.

---

appeal that the court erred in failing to transfer venue, but that is a different issue from ineffective assistance of counsel for failing to request a change of venue.

Further, Ewing has not demonstrated the necessary prejudice to overcome procedural default.  To show such prejudice, a petitioner must show that the error worked to her "actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152 170 (1982).  Ewing has not indicated what the witnesses who were not subpoenaed would have said that would be different from the other evidence and argument presented on her behalf at the sentencing and reconsideration hearings.  Moreover, the Court of Appeals of Virginia  explained why Ewing was not entitled to a venue transfer when she planned to plead guilty.  There can be no prejudice from counsel's failure to request something that a defendant has no right to receive.  Finally, as the Court of Appeals of Virginia explained, sentencing a defendant within the range set by the legislature is committed to the sound discretion of the court, and there is no due process violation or abuse of discretion in imposing a sentence within that range.

A petitioner must demonstrate both good cause and prejudice to overcome procedural default.  Ewing has not made either showing.  Nor has she alleged or shown new evidence of "actual innocence" that would overcome her procedural default of claims 3, 4, and 5.  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

## III.

Ewing's first two claims of ineffective assistance of counsel were presented to the Supreme Court of Virginia and have been exhausted on their merits.  Under

the AEDPA, a federal habeas court can only grant relief on a state claim, adjudicated on the merits in state court, if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The question is not whether a federal court believes the state court's factual findings or legal conclusions are incorrect, but whether they are unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).

The Supreme Court of Virginia did not issue an opinion when denying Ewing's habeas appeal and finding no error in the judgment. Therefore, on federal habeas review the court "looks through" the Supreme Court of Virginia's order and reviews the reasoning of the last reasoned state court opinion, which is the state habeas decision of the Montgomery County Circuit Court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The deferential standard of review prescribed by § 2254(d) applies in reviewing the circuit court habeas decision.

The state circuit court applied the correct standard, noting that to prevail on a claim for ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 87 (1984). The state court held that Ewing failed to show deficient performance and did not reach the prejudice inquiry.

Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must presume that counsel's significant actions and decisions were made in the exercise of reasonable judgment and fell within the wide range of reasonable strategy decisions, based on the facts as they appeared at the time the decisions were made, and not filtered through "the distorting effects of hindsight." *Id.* at 689-90. The *Strickland* standard is "doubly deferential"

14

in the context of a habeas petition, because the deferential standard of review required by § 2254 overlaps with the deferential standard under *Strickland*. *Woods v. Etherton,* 136 S. Ct. 1149, 1151 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense attorney. *Woods*, 136 S. Ct. at 1151. For the reasons explained below, I find that the state court's habeas decision was neither factually nor legally unreasonable on either of the ineffective assistance of counsel claims raised.

A. Claim 1 – Advice to Plead Guilty Under *Alford.*

A plea of guilty by one who maintains her innocence but wishes to avoid the uncertainties of trial is constitutionally permissible so long as the plea is made knowingly and voluntarily and is supported by substantial evidence. *Alford*, 400 U.S. at 31. The state court's determination that Ewing's plea was knowing, voluntary, and supported by substantial evidence is a reasonable determination of facts and application of law.

1. Knowing and Voluntary.

The state court partially based its determination that her plea was knowing and voluntary on the following questions and answers during the plea colloquy on February 12, 2015:

> The Court: Do you fully understand each of the charges
> that have been filed against you?

15

Ms. Ewing:  Yes I do.

The Court:  Have you discussed these charges and their elements with your attorney, Mr. Daniel?

Ms. Ewing:  Yes I have.

The Court:  Do you understand what the Commonwealth must prove before you can be found guilty of these two charges?

Ms. Ewing:  Yes.

The Court:  Have you had enough time to discuss with Mr. Daniel any possible defenses that you may have to these two charges?

Ms. Ewing:  Yes.

The Court:  Have you discussed with Mr. Daniel whether you should plead not guilty, guilty, or *nolo contendere* to each of these charges?

Ms. Ewing:  Yes.

The Court:  After that discussion, Ms. Ewing, did you decide for yourself that you should plead guilty to each of these charges?

Ms. Ewing:  Yes.

The Court:  Are you entering your pleas of guilty today freely and voluntarily?

Ms. Ewing:  Yes.

The Court:  Are you entering your pleas of guilty to both charges because you are, in fact, guilty of each of the crimes charged?

16

> Ms. Ewing:   Yes, regarding the transport charge; No, regarding the murder charge.

Consol. Tr. 12–14.  After the Commonwealth's detailed summary of the evidence, the colloquy continued:

> The Court:  All right, on the first degree murder charge, are you pleading guilty today because this is the Commonwealth's evidence and you do not wish to take the risk that you will be found guilty beyond a reasonable doubt?
>
> Ms. Ewing:  Yes, your honor.

*Id.* at 36.  Ewing further acknowledged understanding that there was no agreement on sentencing and that the court could impose a sentence up to life in prison for the offense; that, by pleading guilty, she waived the right to defend herself and to appeal; and that the court was not required to impose a guideline sentence.  *Id.* at 37–41. Ewing affirmatively represented that she was "entirely satisfied with the services" of her attorney and that no one had made any promises to her to induce her to plead guilty.  *Id.* at 38–40.  The trial court judge observed Ewing's demeanor in responding to the colloquy.  In addition to answering these questions in open court, Ewing completed a written questionnaire, providing the same information, which became a part of the court's record in the case.

At the sentencing hearing on June 1, 2015, Ewing described the events that led up to the physical confrontation during which Ewing killed the victim, Ms.

Shrestha; Ewing further testified that she panicked and tried to hide the body and cover up the crime. *Id.* at 180–83. Ewing testified that she and trial counsel talked "at length" about a jury trial contesting the first-degree murder charges, weighing the pros and the cons; she further acknowledged talking to counsel about the different range of sentencing options available, depending on the outcome of the trial. *Id.* at 195. In the statement of facts supporting her grounds for ineffective assistance, Ewing relates that counsel advised her that a jury could convict her of second-degree murder but then sentence her to forty years. Pet. Ex. 1 at 1, ECF No. 1-1.

As indicated previously, the issue is not whether the federal court might reach a different conclusion from the evidence discussed above, but whether the facts determined by the state habeas court are unreasonable. *Schriro*, 550 U.S. at 473. Based on all the above, I cannot say that the state habeas court's factual determination that Ewing's *Alford* plea was knowing and voluntary is unreasonable.

The state habeas court relied upon a longstanding legal policy in Virginia that "the truth and accuracy of representations made by an accused as to the adequacy of his . . . counsel and the voluntariness of his guilty plea will be considered conclusively established by the trial proceedings," unless the accused offers a valid reason why she should be permitted to contradict her prior statements under oath. *Anderson v. Warden of Powhatan Corr. Ctr.*, 281 S.E.2d 885, 888 (Va. 1981). This

law is consistent with federal law. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (holding that the defendant's declarations under oath in open court at a plea hearing carry a strong presumption of veracity and, though not completely insurmountable, "constitute a formidable barrier in any subsequent collateral proceedings"). Accordingly, the state habeas court's decision that Ewing's plea was knowing and voluntary is not contrary to nor an unreasonable application of federal law.

2. <u>Supported by Substantial Evidence.</u>

The validity of Ewing's plea and the performance of counsel in rendering advice also depend upon whether objective evaluation of the evidence, in the light most favorable to the government, would support a conviction for the charge to which Ewing pled guilty. This requires a brief summary of the unpleasant evidence the Commonwealth was prepared to offer at trial.

There is no dispute that Ewing killed Shrestha. Ewing has admitted this in her testimony at the sentencing hearing, Consol. Tr., 180–81, and in Exhibit 1 to her § 2254 petition, ECF No. 1-1 at 1. She also called a friend, Kiefer Brown, around 4:00 a.m. on February 8, 2014, and told him she was in trouble and had done something really bad, asking him to help her move the body and clean up the mess. Consol. Tr., 16. Less than 24 hours after that, she asked Brown to pick up gasoline and help her dump the body and burn it. *Id.* at 21. On the afternoon of February 8, 2014, Ewing appeared very agitated and told a friend from her Bible study group,

Erika Holub, that she had "killed someone, an EMT who was a good person." *Id.* at 19. Ewing then called her parents and told them she needed a lawyer but was too emotional to continue the conversation; she handed the phone to Holub, who told Ewing's mother that Ewing said she had killed someone. *Id.*

Ample evidence corroborated Ewing's statements. Police found items missing from Shrestha's home in the trunk of Ewing's car, including Shrestha's wallet and driver's license, clothing with Shrestha's name on it, an EMT bag, a blue bag with Shrestha's name containing a blood pressure cuff, a picture of Shrestha and her boyfriend that was missing from the wall of Shrestha's bedroom, and two Chateau Morrisette wine glasses from Shrestha's kitchen. Forensic testing confirmed Ewing's DNA in trace blood on Shrestha's kitchen floor, in tissue under Shrestha's fingernails, and on the steering wheel of Shrestha's car (once it was found) in which Shrestha's body was concealed. *Id.* at 26, 32.

Regarding premeditation, the Commonwealth relied on a text message Ewing sent to Mary Meinhart at 3:00 a.m. on February 7, 2014 (more than twelve hours before Ewing went to Shrestha's home for dinner), on the brutality of the death, and on Ewing's conduct after the killing. Ewing's text stated, "tomorrow night is worrisome . . . I can't stop this idea, (sic) it slowly creeped its way to consume my black heart. I want to . . . let someone else decide, but I've already etched it in history." *Id.* at 15. Although Ewing had a benign explanation for the text message,

a jury would have been free to disregard Ewing's explanation and draw adverse inferences from the text.

The autopsy revealed blunt force injuries to Shrestha's head, arms, and legs, bruises on her face, and abrasions on her nose, lips, and face. The cause of death was ligature strangulation (compression of blood flow to the brain by a foreign object pressed against the neck). Shrestha had several ligature marks on the front, left, and right side of her neck, along with approximately ten abrasions on the front of her neck consistent with clawing to try to remove the object compressing her neck. The evidence indicated a prolonged struggle before Shrestha's death. *Id.* at 30–31.

In addition to hiding Shrestha's body in a sleeping bag and placing it in Shrestha's car, Ewing relocated the car two different times, trying to keep the car and body from being found. She asked Brown to help her burn the body, but he refused. She also wrote two pages of entries in her journal on February 8, which were not very legible in comparison to the rest of her writing, but a document examiner verified that the writing was Ewing's and attempted a translation of entries such as: "Gasoline – must be done tonight!" "I can see you putting your  [illegible]  hands around that  [illegible]  neck;" and "Damn Keifer some friend he f***ing won't even help me move a goddamn body in the middle of  [illegible] , friendship test <u>failed</u>." Ewing also called Brown around 1:30 a.m. on February 10, 2014, not knowing that he was being interviewed by police at the time, and again asked him

to help her move the body and burn it; during that conversation, Ewing referred to Shrestha as a "bitch" and a "whore," and she boasted about moving the body and cleaning the scene by herself, since Brown would not help her.  *Id.* at 23–24.

The evidence relied upon by the Commonwealth and the inferences one can reasonably draw from the evidence are sufficient to support a conviction for first-degree murder.

> [T]he jury may properly consider the brutality of the attack, and whether more than one blow was struck, . . . the disparity in size and strength between the defendant and the victim, . . . the concealment of the victim's body, . . . and efforts to avoid detection. . . . While none of these factors might be sufficient standing alone, in combination they are more than enough to support the jury's finding that the killing . . . was not only malicious, but also willful, deliberate, and premeditated.

*Epperly v. Commonwealth*, 294 S.E.2d 882, 892–93 (Va. 1982); *see also, Clozza v. Commonwealth*, 321 S.E.2d 273, 279 (Va. 1984).  In the light most favorable to the Commonwealth, the number of blunt force traumatic injuries and the prolonged strangulation, the strength disparity between Ewing[7] and Shrestha, the efforts to conceal the body, the plan to burn the body, and the intense anger expressed towards the victim in Ewing's journal entries and in statements to Brown, when combined, could easily support a finding of first-degree murder — even without considering

---

[7] Ewing, a former member of the Corps of Cadets at Virginia Tech, was the top-scoring female cadet in physical training.  In Ewing's statements to Holub about the killing, she said that the victim tried to fight back, but didn't stand a chance.  Consol. Tr., 17, 19.

the text message the day before.  Premeditation does not require proof that Ewing planned the killing before she arrived at Shrestha's home; a plan to kill may be formed only a moment before the fatal act is committed if the accused had time to think and intended to kill.  *Clozza*, 321 S.E.2d at 279.

Because the evidence was sufficient to support a conviction for first-degree murder, the state habeas court reasonably concluded that trial counsel's performance was not deficient.  Admittedly, if the jury completely believed Ewing's version of the events, a conviction for second-degree murder or even voluntary manslaughter might be possible.  No attorney has a crystal ball, however, and predicting what jurors will decide from a particular case is an educated guess, at best, because of each juror's individual life experiences and the many factors that influence the dynamics of juror deliberation.  Allison Orr Larsen, *Bargaining Inside the Black Box*, 99 Geo. L. J. 1567, 1581–83 (2011).  Additional factors complicate an attorney's advice in Virginia, because Virginia is one of a very small number of states that has jurors determine the sentence a defendant receives.  Jurors do not receive information about sentencing guideline recommendations, which are often lower than the low end of the statutory range of punishment for an offense, and jurors have no authority to suspend a portion of the sentence or impose probation, as judges routinely do.  Nancy J. King & Roosevelt L. Noble, *Felony Jury Sentencing in Practice: A Three-State Study*, 57 Vand. L. Rev. 885, 911–12 (2004).

With substantial evidence supporting a possible verdict for first-degree murder, a defendant whose actions after Shrestha's death might inflame the jury, the likelihood of a jury sentence exceeding the sentence of a judge without a jury, and a sentencing guideline range of 23 years, 2 months, through 38 years, 7 months, for first-degree murder and concealment of a body, the state habeas court's conclusion that Ewing failed to prove deficient performance in recommending an *Alford* plea is eminently reasonable.

    B.  <u>Claim 2 – Failure to Advise about the Elements of the Offense, Available Defenses, and Likelihood of Conviction for Lesser-Included Offenses and the Impact on Sentence.</u>

The state habeas court found that Ewing failed to demonstrate deficient performance on this claim, based primarily on the same reasoning relied upon for claim 1. Ewing's current claim that counsel did not advise her of the elements of the crime and possible defenses directly contradicts her statements under oath in open court at the plea hearing. This factual finding is not unreasonable, based upon the colloquy set forth in detail in the prior section. Likewise, reliance on *Anderson,* 281 S.E.2d at 888, to preclude Ewing from contradicting her prior statements under oath without a valid reason is a reasonable application of federal law. *Blackledge*, 431 U.S. at 73–74.

Ewing's claim that counsel did not advise her of strengths and weaknesses of available defenses and lesser-included offenses is contradicted by her sentencing

hearing testimony that she had talked to counsel about the pros and cons of a jury trial to fight the first-degree murder charge.   In that same testimony, Ewing acknowledged discussing various possible sentencing outcomes after a jury trial.. Consol. Tr., 195.  Most significantly, in the statement of facts supporting her grounds for relief, Ewing states that counsel advised her that a jury could convict her of second-degree murder and then return a sentencing verdict of forty years. Pet. Ex. 1 at 1, ECF No. 1-1.   The statutory sentencing range for second-degree murder in Virginia is five to forty years.  Va. Code Ann. § 18.2-32.   That outcome is a reasonably possible outcome of a jury trial, as is the possibility of a first-degree murder conviction and a sentence of life in prison, because the statutory sentencing range for first-degree murder is twenty years to life.  Va. Code Ann. §§ 18.2-10, 18.2-32.  On its face, Ewing's statements contradict the claim that counsel did not discuss with her the lesser-included offenses and potential sentencing outcomes if she chose a trial by jury.  The state habeas court's determination that Ewing failed to demonstrate deficient performance here is also reasonable.

Because the state habeas court's denial of claims 1 and 2 is neither an unreasonable determination of facts nor contrary to nor an unreasonable application of federal law, I cannot grant the relief requested and must dismiss Ewing's petition.

IV.

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability.  *See* Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were sufficiently weighty to deserve encouragement to proceed further.  *Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *Gonzalez v. Thaler,* 565 U.S. 134, 140–41 (2012).

V.

For the reasons stated, I will grant the Motion to Dismiss.  I will decline to issue a certificate of appealability because Ewing has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong. A separate Final Order will be entered herewith.

DATED:  September 30, 2020

/s/  JAMES P. JONES
United States District Judge

26